UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

STEPHEN LINZA,

                Plaintiff,    1:15-CV-00567(MAT)

    -v-                           **DECISION AND ORDER**

ANDREW SAUL,
Commissioner of Social Security[1],

                Defendant.
_____

## **INTRODUCTION**

Stephen Linza ("Plaintiff"), represented by counsel, brings this action seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant"), declaring that Defendant improperly applied 42 U.S.C. § 415(a)(7), also known as the Windfall Elimination Provision ("WEP"), to his social security retirement benefits, thereby reducing the amount of his social security payment. Docket No. 1. The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docket Nos. 24, 25), and responses (Docket No. 26, 27, 29). For the reasons set forth below, the Court concludes that the Commissioner erred in determining that Plaintiff, as a dual-status technician in the

---

[1]

    As of the date of this Decision and Order, Carolyn W. Colvin, the Defendant named by Plaintiff in this matter, is no longer the Acting Commissioner of Social Security. Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Therefore, the Clerk of Court is instructed to substitute "Andrew Saul, Commissioner of Social Security" as the Defendant, in accordance with Fed. R. Civ. P. 25(d).

National Guard, was subject to the WEP. Accordingly, the decision of the Commissioner is reversed.

## BACKGROUND

The material facts in the case do not appear to be in dispute. Plaintiff served as a "dual status" technician in New York's Air National Guard (the "National Guard"). T. 9-10, 73. At his administrative hearing, Plaintiff testified that he began working as an aircraft mechanic for the 107th Fighter Inceptor Group of the National Guard in 1977. T. 75, 76. In order to hold that position, Plaintiff was required to join the National Guard and perform active duty each year. T. 76. In addition to attending weekend drills in uniform once per month, and two weeks of active duty annually, Plaintiff was required to travel abroad when ordered, based on military needs. *Id*. Specifically, Plaintiff testified, "they would make you go to whatever - wherever they needed you, they would ask you if you would go and then you would - I've been to Guam, I've been to France, Italy." T. 77. Plaintiff further testified, "sooner or later, push would come to shove but they'll ask you would you be interested in going because we - with the air refueling mission, they needed bodies and the guys would alternate on and off to take all [of the] trips. . . ." T. 77-78.

The missions for duty outside of the United States could number four to five per year. Plaintiff testified, "[o]h, God. In my 30-year period, I had maybe four or five a year, something like that. There's some guys that . . . do even more than that."

T. 78. The amount of time each mission would take varied. Plaintiff testified that the length of these missions would "depend[]. If it was a two-week fighter haul, you'd drag fighters to a country and then drop them off, refuel and go back the next day but sometimes it could be 50, 60 days or even more." T. 78.

Plaintiff also testified that throughout his military training, whether at his home base, or on an overseas assignment, he wore a military uniform and that overseas assignments were considered active duty. T. 81. Specifically, Plaintiff stated, "[a]nything out of the United States would be active duty unless, like New York City with . . . 911, they put you on active duty for as long as it takes to get the job done and when they [say] you can go home, they bring more people in to take care of that." *Id*.

Throughout his tenure in the National Guard, Plaintiff was required to maintain military physical standards, including passing a PT test, and by keeping a military shave and haircut, as required by military regulations. *Id*. Plaintiff also was subject to military discipline. T. 82. Plaintiff eventually achieved the rank of E7, Master Sergeant. *Id*. Plaintiff retired in 2008, and received both a civil service and military pension. *Id*.

## PROCEDURAL HISTORY

On April 5, 2011, Plaintiff applied for retirement insurance benefits. T. 15-16. Defendant found that Plaintiff was entitled to benefits beginning in August 2011. T. 17-19.

On August 11, 2011, Defendant notified Plaintiff that it was reducing his monthly benefit amount due to his receipt of a pension based on work not covered by the Act. T. 20-21. On December 28, 2012, Plaintiff requested reconsideration of his benefits calculation. T. 22. On April 29, 2013, after reconsideration, Defendant determined that the computation of Plaintiff's benefits was correct. T. 29-31. Plaintiff requested a hearing before an administrative law judge (ALJ); on October 24, 2013, Plaintiff, with his attorney, appeared before ALJ Donald T. McDougal1. T. 69-85. The ALJ issued an unfavorable decision on December 27, 2013. T. 6-11. Plaintiff requested review by the Appeals Council; on April 21, 2015, the Appeals Council denied Plaintiff's request, making the ALJ's determination the Commissioner's final decision. T. 2-5.

Plaintiff filed his motion for judgment on the pleadings on March 23, 2017 (Docket No. 24), and Defendant filed its motion for judgment on the pleadings on April 24, 2017 (Docket No. 25). Plaintiff filed his response on May 8, 2017. Docket No. 26. On December 17, 2018, and May 22, 2019, Defendant filed notices of supplemental authority addressing issues raised in the parties' original motion papers. Docket No. 27, 29. The case was transferred to the undersigned on May 3, 2019. Docket No. 28.

## THE ALJ'S DECISION

The ALJ found that Acquiescence Ruling, AR 12-X(8), was controlling in Plaintiff's case. T. 10. The ALJ explained that AR 12-X(8) states "that we only ignore retirement pay from military

−4−

service, including a Reserve component, and not National Guard employment." *Id*. The ALJ further clarified that AR 12-X(8), "(and thus the benefit of Peterson v. Astrue) *applies only to permanent legal residents in a state within the Eighth Circuit*, i.e., Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota and South Dakota." *Id*. (emphasis added). In other words, because Plaintiff resides in New York, AR 12-X(8) did not apply to him. Accordingly, the ALJ found that Plaintiff's retirement benefits were correctly reduced as required by the WEP. T. 11.

## DISCUSSION

### I. Scope of Review

"A court reviewing a final decision by the Commissioner 'is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard.'" *Tipadis v. Commissioner*, 284 F. Supp. 3d 517, 521 (S.D.N.Y. 2018) (quoting *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)); *see also Sambataro v. Commissioner,* No. 13-cv-8953(KBF), 2015 WL 1539046, at *5 (S.D.N.Y. Apr. 6, 2015) ("The Court may only consider whether the ALJ has applied the correct legal standard and whether his findings of fact are supported by substantial evidence. When these two conditions are met, the Commissioner's decision is final."). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support

-5-

a conclusion.'" *Id.* (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

## II. Analysis

The question before the Court is whether the Uniformed Services exception to the WEP applies to dual-status technicians in the National Guard.

### A. The WEP and the Uniformed Services Exception

"Congress enacted the WEP in 1983 'to eliminate the unintended "double dipping" that accrued to workers who split their careers between employment taxed for Social Security benefits ("covered") and employment exempt from Social Security taxes ("noncovered").'" *Newton v. Commissioner*, No. 18-751(RMB), 2019 WL 1417248, at *2 (D.N.J. Mar. 29, 2019) (quoting *Stroup v. Barnhart*, 327 F.3d 1258, 1259-60 (11th Cir. 2003)). As explained by the Second Circuit Court of Appeals in *Rudykoff v. Apfel*:

> The WEP was enacted to eliminate the unintended benefits windfall that accrued to workers who split their career between employment in which their earnings were taxed for social security and other employment, such as federal employment, in which their earnings were exempt from social security taxes. An employment history of this nature gave the appearance of low lifetime earnings for the purposes of calculating social security benefits, thus resulting in a relatively high payment under the SSA's weighted formula that did not take into account the individual's receipt of a federal pension. As Congress recognized in creating the WEP, "[f]ederal . . . civil service pensions . . . are generally designed to take the place both of social security and a private pension plan for workers who remain in [federal] employment throughout their careers." Without the WEP, therefore, a federal employee with a civil service pension who worked for a brief period in the private sector would be eligible for a "total retirement pension income [that would] most

likely greatly exceed that of a worker with similar earnings all under social security."

193 F.3d 579, 580-81 (2d Cir. 1999) (citations omitted).

As a dual-status technician in New York's Air National Guard, Plaintiff's employment was considered to be "dual status," *i.e.*, both civil and military. Upon retirement, he received three payments, including a civilian pension and a military pension, both of which were based on his service in the National Guard, as well as social security retirement benefits. *See* Docket No. 24-1 at 4. The Social Security Administration therefore applied the WEP in calculating Plaintiff's social security benefits.

There are statutory exceptions to application of the WEP, and "[a]t issue in this case is the 'uniformed services' exception to the WEP." *Newton*, 2019 WL 1417248, at *3. The Uniformed Services exception states, in relevant part:

> (7)(A) In the case of an individual whose primary insurance amount would be computed under paragraph (1) of this subsection, who —
>
> (i) attains age 62 after 1985 (except where he or she became entitled to a disability insurance benefit before 1986 and remained so entitled in any of the 12 months immediately preceding his or her attainment of age 62), or
>
> (ii) would attain age 62 after 1985 and becomes eligible for a disability insurance benefit after 1985,
>
> and who first becomes eligible after 1985 for a monthly periodic payment ( . . . **but excluding . . . (III) a payment based wholly on service as a member of a uniformed service (as defined in section 410(m) of this title))** which is based in whole or in part upon his or her earnings for service which did not constitute . . . [covered employment], the primary insurance amount of that individual during his or her concurrent entitlement

to such monthly period payment and to old-age or disability insurance benefits shall be computed or recomputed under subparagraph (B).

*Martin v. SSA*, 903 F.3d 1154, 1163 (11th Cir. 2018) (emphasis in original); 42 U.S.C. § 415(a)(7)(A)(ii)(III). Thus, the WEP "is not meant to be used to reduce retirement benefits on the basis of 'a monthly periodic payment . . . based wholly on service as a member of a uniformed service.'" *Newton*, 2019 WL 1417248, at *3 (quoting 42 U.S.C. § 415(a)(7)(A)(ii)(III)).

It is unsettled whether the Uniformed Services exception applies to dual-status technicians in the National Guard, and "[c]urrently, there is a Circuit split on this issue, with the Eighth Circuit applying the exception for DSTs [dual-status technicians], and the Eleventh Circuit holding that the exception does not apply to DSTs." *Newton,* 2019 WL 1417248, at *3. For the reasons explained below, the Court agrees with the Eighth Circuit's finding in *Petersen v. Astrue* that "Section 415(a)(7)(A) only requires that the service be as a member of the uniformed service," and therefore, the WEP exception applies to dual-status technicians in the National Guard, such as Plaintiff. *See Petersen*, 633 F.3d 633, 637 (8th Cir. 2011).

### B. __The Parties' Positions__

Plaintiff argues that the Court should apply the holding of *Petersen* (*see* Docket No. 24-1 at 6-7), in which the Eighth Circuit found no ambiguity in the WEP exception, and concluded that "[d]ue to these unique National Guard technician requirements imposed upon

-8-

him, we agree with the district court that Petersen performed his work 'as a member of' the Nebraska Air National Guard." *Id*. at 637-38. As a result, the Court concluded that dual-status technicians fell under the WEP's Uniformed Services exception. *Id.*

In response, Defendant contends that *Petersen* was incorrectly decided, and is not binding on courts within the Second Circuit. Docket No. 25-1 at 22. Defendant further argues that *Petersen* failed to consider whether a dual-status technician's service is based "*wholly* on service as" a member of the National Guard, which is what is required by the WEP exception. *Id*. at 23-24. Defendant also contends that the *Petersen* court "focused solely on the day-to-day requirements imposed on a dual status National Guard technician," and ignored the fact that the technicians are considered federal civilian employees, who earn Civil Service pensions. *Id*. at 23.

Defendant cites four specific cases supporting its position. These include *Martin v. Berryhill*, decided by the U.S. District Court for the Northern District of Alabama; *Larson v. Berryhill*, decided by the U.S. District Court for the District of Montana; *Kientz v. Berryhill*, decided by the U.S. District Court for the District of Kansas; and *Newton v. Commissioner*, decided by the U.S. District Court for the District of New Jersey. *Id*. at 22; *see also* Docket Nos. 27, 29. On September 7, 2018, the Eleventh Circuit affirmed the *Martin* decision. *See Martin*, 903 F.3d 1154. In May

2019, in *Babcock v. Commissioner*, the United States District Court for the Western District of Michigan weighed in on the issue, agreeing with the Eleventh Circuit's decision in *Martin* that the uniformed services exception does not apply to dual-status technicians. *See Babcock v. Commissioner*, No. 1:18-CV-255, 2019 WL 2205712, at *2 (W.D. Mich. May 22, 2019).[2] Neither of the parties have cited to any controlling precedent from within the Second Circuit Court of Appeals addressing this issue, nor has the Court identified any such controlling precedent.

### C. The Plain Language of Section 415(a)(7)(5) Applies to Dual-Status Technicians

"As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. [U]nless otherwise defined, statutory words will be interpreted as taking their ordinary, contemporary, common meaning. When the language of a statute is unambiguous, judicial inquiry is complete." *U.S. v. American Society of Composers, Authors, and Publishers*, 627 F.3d 64, 72 (2d Cir. 2010) (internal quotations and citations omitted) (alteration in original).

The Court agrees with the Eighth Circuit in *Peterson* that "the meaning and intent of section 415(a)(7)(A) is clear and unambiguous," and "therefore, it is unnecessary . . . to defer to

---

[2] *Newton*, *Kientz*, and *Babcock* are presently on appeal before the Third, Tenth, and Sixth Circuits, respectively.

-10-

the SSA's interpretation of the statute." *Peterson*, 633 F.3d at 636. Specifically, "the plain language of the statute makes it abundantly clear that the exception applies to all service performed as a member of a uniformed service." *Id.* at 637 (emphasis added).

In its brief, Defendant argues that "the plain language of the WEP statute does not support the proposition that a DSTech's Civil Service pension payments are *wholly based on service as* a member of the National Guard." Docket No. 24-1 at 25. Defendant essentially contends that Plaintiff served in two separate capacities; one as a civilian technician, and the other as a member of the National Guard. *Id.* ("the requirements of the position do not overcome the inherent bifurcated nature of the DSTech position.").

Pursuant to the Air Guard Technician Act of 1968, National Guard technicians were given a "dual status" role, meaning:

> Federal civilian employee[s] who . . . [are] required as a condition of that employment to maintain membership in the Selected Reserve; and [are] assigned to a civilian position as a technician in the organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces.

*Petersen*, 633 F.3d at 636-37 (quoting 10 U.S.C. § 10216(a)(1)(B)-(C)) (alterations in original).

The Court recognizes that dual-status technicians are referred to as civilian employees. *See* 10 U.S.C. § 10216(1) and (2) ("a military technician (dual status) is a Federal civilian employee", "is assigned to a civilian position", and "shall be authorized and

-11-

accounted for as a separate category of civilian employees."). However, the record before the Court conflicts with Defendant's interpretation of Plaintiff's duties as "bifurcated." Based on the requirements of his dual-status technician position and his testimony, Plaintiff did not serve in two positions, one as a member of the National Guard, and the other as a civilian technician. Rather, he served as a member of the National Guard with special technical capabilities. Plaintiff clearly testified to what his duties consisted of, including working on technical aspects of military aircrafts and extensive active duty requirements, including overseas deployment. *See* "Background" Section, *supra*. In other words, because of his technical background, Plaintiff served as an on-call member of the National Guard from 1977 through 2008, when he retired.

The Uniformed Services exception does not specifically exclude individuals working in such a capacity. Indeed, in today's military, the advanced technical abilities required of its members is an important ingredient in military armament - in this particular case, military aircraft. This fact is underscored by Plaintiff's testimony that his skills, and the skills of his colleagues, were in-demand overseas. Accordingly, as explained in *Petersen*:

> We do not agree with the SSA's approach that because Petersen was a "dual status" employee, his work as a National Guard technician was not work performed "as a member of the uniformed services." . . . Under the WEP's exception, if Petersen is receiving a pension that is "based wholly on service as a member of a uniformed service (as defined in [42 U.S.C. § 410(m)])," that

-12-

person's social security benefit is not subject to WEP's modified formula. Section 415(a)(7)(A) only requires that the service be as a member of the uniformed service. Petersen's pension meets the limited requirements of the statute. . . . Due to these unique National Guard technician requirements imposed upon him, we agree . . . that Petersen performed his work 'as a member of' the . . . Air National Guard.

*Petersen*, 633 F.3d at 637.

Given his membership in the National Guard and the requirements of his position, the Court finds that Plaintiff conforms to all of the requirements of the Uniformed Services exception, and his pension meets the limited requirements of the statute. *See Petersen*, 633 F.3d at 637 ("Under the WEP's exception, if Petersen is receiving a pension that is 'based wholly on service as a member of the uniformed service . . .', that person's social security benefit is not subject to WEP's modified formula. Section 415(a)(7)(A) only requires that the service be as a member of the uniformed service. Petersen's pension meets the limited requirements of the statute.").

The term "member of a uniformed service," as defined by the Uniformed Services exception to the WEP, unequivocally includes members of the National Guard. *See* 42 U.S.C. § 415(a)(7)(A)(ii)(III) (defining a "member of the uniformed service," in accordance with section 410(m), which includes any person "appointed, enlisted, or inducted in a component of the Army, Navy, Air Force, Marine Corps, or Coast Guard," including a reserve component). Plaintiff's hearing testimony makes clear that he did more than simply serve as a member of the National Guard. His

-13-

designation as a dual-status technician required him to perform his duties utilizing his technical capabilities under the control and authority of the National Guard - and most importantly, where and when needed. Plaintiff's well-earned pension payments resulted from applying his technical expertise for the service of, and at the direction of, the National Guard.

As a dual-status technician, Plaintiff was required to maintain membership in the National Guard, wear the uniform appropriate for his rank, maintain the military grade for his position, maintain physical standards, perform active duty, and was subject to military discipline. *See* Docket No. 24-1 at 7; *see also* 10 U.S.C. § 10216; *Petersen*, 633 F.3d at 637-38. Defendant does not dispute that these requirements were met in the instant case. *See* Docket No. 25-1 at 7. These membership requirements underscore the essential and technical military expertise dual-status technicians contribute to the military mission of their employment. These individuals should not be penalized simply because their technical skills serve multiple functions. *See Petersen*, 633 F.3d at 637 ("The SSA's request that this court read a 'military duty' requirement into the statute is rejected.").

In sum, the Court concludes that the WEP's uniformed services exception is clear and unambiguous. The Court adopts the analysis employed by the Eighth Circuit in *Petersen* in concluding that the Uniformed Services exception "applies to <u>all</u> service performed as a member of a uniformed service," and that dual-status technicians perform their work as members of the National Guard. *Petersen*, 633

F.3d at 637 (emphasis added). Similar to the Plaintiff in *Petersen*, Plaintiff's pensions are derived wholly from his "Uniformed Service," and there is no dispute that Plaintiff's position as a dual-status technician in the National Guard qualified him as member of the "Uniformed Service." Accordingly, Plaintiff's employment falls within the Uniformed Services exception to the WEP.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision must be reversed. Accordingly, Plaintiff's motion for judgment on the pleadings (Docket No. 24) is granted, Defendant's motion for judgment on the pleadings (Docket No. 25) is denied. The case is remanded to the Commissioner for further proceedings consistent with this Decision and Order. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
Honorable MICHAEL A. TELESCA
United States District Judge

Dated: July 1, 2019
Rochester, New York